**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

HECTOR SANABRIA,                :
                                :    Civil Action No. 09-3269 (FLW)
          Petitioner,           :
                                :
     v.                         :    **OPINION**
                                :
MICHELLE R. RICCI, et al.,      :
                                :
          Respondents.          :

**APPEARANCES**:

Petitioner pro se                Counsel for Respondents
Hector Sanabria                  Susan Marie Scott
New Jersey State Prison          Deputy Attorney General
P.O. Box 861                     R.J. Hughes Justice Complex
Trenton, NJ 08625                P.O. Box 112
                                 Trenton, NJ 08625

**WOLFSON**, District Judge

    Petitioner Hector Sanabria, a prisoner currently confined at New Jersey State Prison in Trenton, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the results of a prison disciplinary proceeding. The respondents are Michelle Ricci and the Attorney General of the State of New Jersey.

    For the reasons stated herein, the Petition must be denied.

I.   BACKGROUND

A.   Factual Background

Petitioner is a state prisoner serving a 90-year sentence for murder, aggravated assault, and various drug and weapons offenses.  While confined pursuant to that sentence, he was found guilty of committing Department of Corrections prohibited act *.803/*306 (attempt to commit "conduct which disrupts or interferes with the security or orderly running of the correctional facility) and *.702 (unauthorized contact with the public), in violation of N.J.A.C. 10A:44.1(a).  Sanctions were imposed including loss of 180 days commutation credit.  In addition, in a separate proceeding, the DOC placed him in the Management Control Unit, a housing unit "designed to insure the effective control of the prison's most violent and disruptive inmates."  Sanabria v. Department of Corrections, 2008 WL 990291, *1 (N.J.Super. App.Div. April 11, 2008).  Here, Petitioner challenges both of those decisions.

The relevant facts are set forth in the opinion of the Superior Court of New Jersey, Appellate Division.[1]

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

Hearing Officer Maniscalco presided over the discipline hearing on October 23, 2006. A confidential investigation conducted by Raphael Dolce, a Senior Investigator with the Department's Special Investigations Division, with the aid of a confidential informant, revealed that Sanabria fostered a relationship with Luz Rodriguez, a woman who initially came to the prison as a member of a church group known as the Uncion Divina, at which time she obtained Sanabria's name from a list of inmates who wanted to participate in outside correspondence. After picking Sanabria's name at random, Rodriguez and Sanabria developed a romantic relationship. At first, Rodriguez visited Sanabria at the prison as a member of the church group on several occasions. Later, Rodriguez visited the prison outside the auspices of the church, attending a poetry reading held by an inmate group known as the Hispanic American Progress (HAP), in which Sanabria, an admitted member of the group, submitted her name and had it placed on a list of community volunteers for attendance at the reading. Eventually, she visited Sanabria in a personal capacity outside of church related functions.

HAP was initially started as a liaison between the inmate population and the prison administration. However, through a confidential informant, it was learned that Sanabria, together with others, used HAP's balcony-situated office to run drugs and contraband smuggling operations, which included facilitating the obtaining of three hunting grade knives and a loaded .32 caliber handgun eventually recovered, respectively, within secured areas of the prison in 2005 and 2006. The investigation revealed that the gun was received by Sanabria and the knives were obtained to strengthen a Security Threat Group created by Sanabria's inmate brother, Jesus. The investigation also established that Rodriguez was given money by specific inmates, which was accepted by her to pay phone bills and buy gifts, thereby evading existing institutional measures designed to control monetary transactions, mail, and telephone use.

Maniscalco found, based upon the above evidence, that Sanabria "participated in unauthorized visits with [Rodriguez] and solicited other inmates to launder monies to conceal transactions" in "an attempt to circumvent existing security and monitoring procedures

of the facility." On November 8, 2006, Sanabria's administrative appeal was denied by Assistant Superintendent Al Kandell.

Following hearings held on November 27, 2006 and December 19, 2006, the Management Control Unit (MCU) Review Committee (Committee) on February 2, 2007, rendered a decision assigning Sanabria to MCU. In arriving at its decision, the Committee reviewed Sanabria's disciplinary history, which included seven charges. A 1992 assault with a weapon and the disciplinary charges that are the subject of the within appeal were deemed the most serious infractions. The Committee found that Sanabria's involvement with HAP, a purported inmate self-help group that was a "ruse," "orchestrated ... to avoid detection," was organized in an "attempt[] to mask a variety of illegitimate, unauthorized activities inside" the prison. Determining that institutional transfer was not an option, the Committee noted that Sanabria's ninety-year mandatory minimum sentence required his being imprisoned at New Jersey State Prison, the only maximum security institution available. Administrator Michelle Ricci affirmed the Committee's decision on March 16, 2007. Finding the Committee's decision "appropriate," Ricci explained:

> The committee considered your past institutional conduct or disciplinary record, which reflects that you cannot be housed in general population due to your disruptive conduct at New Jersey State Prison. This includes your history of attempts to introduce contraband (such as weapons, narcotics[,] etc.) into the facility, which was supported by NJSP Special Investigation Division investigation, as well as other institutional infractions. Based on the aforementioned factors, you are a threat to the safety and security of this institution.
>
> Based on these facts, it is quite apparent that you are incapable of being housed in general population. Your disruptive behavior that is documented by the Special Investigation Division at NJSP, along with the disciplinary infractions you received while incarcerated at NJSP reflects that you should be housed in a highly structured environment such as the Management Control Unit.

4

Sanabria v. Department of Corrections, 2008 WL 990291, *2-*3 (N.J.Super. App.Div. Apr. 11, 2008).[2]

B.  Procedural History

After exhausting his administrative remedies, Petitioner appealed to the Superior Court of New Jersey, Appellate Division, which affirmed both the disciplinary sanctions and the decision to transfer Petitioner to the Management Control Unit.  See Sanabria v. Department of Corrections, 2008 WL 990291 (N.J.Super. App.Div. April 11, 2008).  The Supreme Court of New Jersey denied certification on October 31, 2008.  Sanabria v. New Jersey Dept. of Corrections, 196 N.J. 601 (2008).  This Petition followed.

Here, Petitioner contends that he was denied due process in both the disciplinary proceeding and the decision to transfer him to the Management Control Unit, because he was not permitted to review evidence from the confidential informant, because the institutional decision-makers did not perform an independent evaluation of the credibility of the confidential informant, because there is not sufficient evidence to sustain the charges. In addition, Petitioner contends that he was denied the opportunity to submit documentary evidence, although he does not further explain the circumstances or explain what documentary

---

[2] The confidential investigation report referred to by the Appellate Division has been filed with this Court under seal.

evidence he sought to submit and how that would have affected the decision.

## II.   28 U.S.C. § 2254

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254 now provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.
>
> With respect to any claim adjudicated on the merits in state court proceedings, the writ shall not issue unless the adjudication of the claim
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent."

Williams v. Taylor, 529 U.S. 362, 405-06 (2000) (O'Connor, J., for the Court, Part II).  A state court decision "involve[s] an unreasonable application" of federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," and may involve an "unreasonable application" of federal law "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply," (although the Supreme Court expressly declined to decide the latter).  Id. at 407-09.  To be an "unreasonable application" of clearly established federal law, the state court's application must be objectively unreasonable.  Id. at 409.  In determining whether the state court's application of Supreme Court precedent was objectively unreasonable, a habeas court may consider the decisions of inferior federal courts.  Matteo v. Superintendent, 171 F.3d 877, 890 (3d Cir. 1999).

Even a summary adjudication by the state court on the merits of a claim is entitled to § 2254(d) deference.  Chadwick v. Janecka, 302 F.3d 107, 116 (3d Cir. 2002) (citing Weeks v. Angelone, 528 U.S. 225, 237 (2000)).  With respect to claims presented to, but unadjudicated by, the state courts, however, a federal court may exercise pre-AEDPA independent judgment.  See

7

Hameen v. State of Delaware, 212 F.3d 226, 248 (3d Cir. 2000), cert. denied, 532 U.S. 924 (2001); Purnell v. Hendricks, 2000 WL 1523144, *6 n.4 (D.N.J. 2000).  See also Schoenberger v. Russell, 290 F.3d 831, 842 (6th Cir. 2002) (Moore, J., concurring) (and cases discussed therein).

The deference required by § 2254(d) applies without regard to whether the state court cites to Supreme Court or other federal caselaw, "as long as the reasoning of the state court does not contradict relevant Supreme Court precedent."  Priester v. Vaughn, 382 F.3d 394, 398 (3d Cir. 2004) (citing Early v. Packer, 537 U.S. 3 (2002); Woodford v. Visciotti, 537 U.S. 19 (2002)).

Finally, a pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

## III.   ANALYSIS

A.   The Disciplinary Proceeding

Petitioner contends that he was denied due process in the disciplinary hearing proceedings, because he was not permitted to review evidence from a confidential informant, or to submit his own documentary evidence,[3] because he was not informed that an interview with Luz Rodriguez was recorded, and because there was not sufficient evidence to sustain the charges.

Convicted and sentenced prisoners retain the protections of the Due Process Clause of the Fifth and Fourteenth Amendments that the government may not deprive them of life, liberty, or property without due process of law.  See Wolff v. McDonnell, 418 U.S. 539, 556 (1974); Haines v. Kerner, 404 U.S. 519 (1972); Wilwording v. Swenson, 404 U.S. 249 (1971).  Such protections are, however, "subject to restrictions imposed by the nature of the regime to which [prisoners] have been lawfully committed. ...  In sum, there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application."  Wolff, 418 U.S. at 556.

---

[3] The Court notes that the record reflects that Petitioner objected, in the state proceedings, to the fact that he was not provided documentary evidence regarding the names of HAP volunteers, one of whom was alleged to be Ms. Rodriguez, which he wished to submit in the disciplinary proceeding.  To the extent this is the documentary evidence to which Petitioner refers, it is not clear how it could have affected the decision.

9

A liberty interest protected by the Due Process Clause may arise from either of two sources: the Due Process Clause itself or from state or federal law. See Hewitt v. Helms, 459 U.S. 460, 466 (1983); Asquith v. Department of Corrections, 186 F.3d 407, 409 (3d Cir. 1999).

Where the government has created a right to good time credits, and has recognized that a prisoner's misconduct authorizes deprivation of the right to good time credits as a sanction,[4] "the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment 'liberty' to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated." Wolff, 418 U.S. at 557.

Thus, under the Fourteenth Amendment, a prisoner is entitled to an impartial disciplinary tribunal, Wolff, 418 U.S. at 570-71, excluding "only those [prison] officials who have a direct personal or otherwise substantial involvement ... in the circumstances underlying the charge from sitting on the disciplinary body," Meyers v. Alldredge, 492 F.2d 296, 306 (3d Cir. 1974).

---

[4] The Constitution itself does not guarantee good time credits for satisfactory behavior in prison. New Jersey law provides for such credits. See N.J. Stat. Ann. § 30:4-140.

To comply with the requirements of the Due Process Clause, prison officials also must provide a prisoner facing loss of good time credits with: (1) a written notice of the charges at least 24 hours prior to any hearing, (2) an opportunity to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals,[5] and (3) a written statement by the factfinders as to the evidence relied on and the reasons for the disciplinary action.  Wolff, 418 U.S. at 564-66. Prisoners do not have a due process right of confrontation and cross-examination, or a right to counsel, in prison disciplinary proceedings.  Id. at 569-70.  Where an illiterate inmate is involved, or the complexity of the issue makes it unlikely that the inmate involved will be able to collect and present the evidence necessary for an adequate comprehension of the case, the prisoner should be permitted to seek the aid of a fellow inmate or appropriate staff member.  Id. at 570.

---

[5] Prison officials must justify their refusal to call witnesses requested by the prisoner, but such justification need not be presented at the time of the hearing.  To the contrary, the explanation for refusal to call witnesses requested by the prisoner may be provided through court testimony if the deprivation of a liberty interest is challenged because of that claimed defect in the hearing.  See Ponte v. Real, 471 U.S. 491 (1985).  "{P]rison officials may deny a prisoner's request to call a witness in order to further prison security and correctional goals.  ...  [T]he burden of persuasion as to the existence and sufficiency of such institutional concerns is borne by the prison officials, not by the prisoners."  Grandison v. Cuyler, 774 F.2d 598, 604 (3d Cir. 1985).

Finally, due process requires that findings of a prison disciplinary official, that result in the loss of good time credits, must be supported by "some evidence" in the record. Superintendent, Massachusetts Correctional Institution at Wolpole v. Hill, 472 U.S. 445, 454-56 (1985).

Similarly, New Jersey law provides for certain procedural protections in connection with prison disciplinary proceedings. Under New Jersey law, as prison disciplinary proceedings are not part of a criminal prosecution, the full spectrum of rights applicable to criminal prosecutions does not apply.  See Avant v. Clifford, 67 N.J. 496, 522 (1975).  Prisoners accused of disciplinary infractions are entitled to written notice of the charge at least twenty-four hours prior to the hearing; an impartial tribunal; limited rights to present witnesses and documentary evidence; limited rights of confrontation and cross-examination where the hearing officer deems it necessary for an adequate presentation of the evidence, especially where serious issues of credibility are at stake; assistance of a representative at hearings; and a written statement of the evidence relied upon and the reasons for the sanctions imposed. See Avant, 67 N.J. at 525-30; McDonald v. Pinchak, 139 N.J. 188 (1995); Jacobs v. Stephens, 139 N.J. 212 (1995).

In this matter, the Appellate Division rejected Petitioner's claims of due process violations.

> On appeal, Sanabria raises a multitude of issues, including assertions that he was: (1) the subject of a witch hunt and fraudulent SID investigation; (2) not afforded appropriate constitutional protections; (3) unfairly targeted as a member of HAP; and (4) denied access to exculpatory evidence. He also contends that both the disciplinary charges and the decision to place him in the MCU was not based upon substantial credible evidence in the record. We disagree. Our careful review of the entire record convinces us that both decisions of the Department are supported by substantial credible evidence in the administrative record. Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980). Moreover, Sanabria was accorded the appropriate safeguards and protections during the procedure in accordance with Avant v. Clifford, 67 N.J. 496, 522-30 (1975). Sanabria's factual and legal contentions to the contrary are without sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(D) and (E).

Sanabria v. Department of Corrections, 2008 WL 990291, * 3 (N.J.Super. App. Div. April 11, 2008).

The Appellate Division decision is neither contrary to nor an unreasonable application of clearly established federal law, nor is it based on an unreasonable determination of the facts in light of the evidence presented. Here, Petitioner received all the procedural protections required by Wolff and state law. He had advance notice of the accusations, assistance of a counsel-substitute, and multiple opportunities to address the accusations. He received a statement of the evidence relied upon and there is nothing to suggest the hearing officer was not impartial.

Petitioner was advised that the accusations against him derived from a confidential investigation, with respect to which

13

he had been interviewed several times.  Thus, he was aware that the investigation involved the activities of HAP and a gun found on prison property.  Petitioner received summaries of the confidential report during the disciplinary proceedings.  (Petitioner's Brief on Appeal to Appellate Division, at 5-6, Exs. Da10, Da11.)  Petitioner does not have any further right to the details of the confidential investigation relied upon by the hearing officer.  See, e.g., Wolff, 418 U.S. at 584 (prisoner's right to call witnesses in disciplinary proceeding may be limited by need to protect confidential informant) (Marshall, J., and Brennan, J., concurring in part and dissenting in part); Baxter v. Palmigiano, 425 U.S. 308, 322 n.5 (1976); Henderson v. Carlson, 812 F.2d 874 (3d Cir. 1987) (hearing officer is not required to disclose evidence bearing on the reliability of confidential informants).  Petitioner is not entitled to relief on this claim.

B.   The Transfer to the Management Control Unit

Petitioner also challenges his transfer to the Management Control Unit.

As noted above, a liberty interest protected by the Due Process Clause may arise from either of two sources:  the Due Process Clause itself or State law.  See Hewitt v. Helms, 459 U.S. 460, 466 (1983); Asquith v. Department of Corrections, 186 F.3d 407, 409 (3d Cir. 1999).  With respect to convicted and

14

sentenced prisoners, "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." Montanye v. Haymes, 427 U.S. 236, 242 (1976), quoted in Hewitt, 459 U.S. at 468 and Sandin v. Conner, 515 U.S. 472, 480 (1995). Cf. Washington v. Harper, 494 U.S. 210, 221-22 (1990)(prisoner has liberty interest under the Due Process Clause in freedom from involuntary administration of psychotropic drugs); Vitek v. Jones, 445 U.S. 480, 493-94 (1980)(prisoner has liberty interest under the Due Process Clause in freedom from involuntary transfer to state mental hospital coupled with mandatory treatment for mental illness, a punishment carrying "stigmatizing consequences" and "qualitatively different" from punishment characteristically suffered by one convicted of a crime). See also Asquith, 186 F.3d at 410-11 (no liberty interest under the Due Process Clause in remaining in halfway house).

States, however, may confer on prisoners liberty interests that are protected by the Due Process Clause. "But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of

15

its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484 (finding that disciplinary segregation conditions which effectively mirrored those of administrative segregation and protective custody were not "atypical and significant hardships" in which a state conceivably might create liberty interest). See also Asquith, 186 F.3d at 411-12 (return to prison from halfway house did not impose "atypical and significant hardship" on prisoner and, thus, did not deprive him of protected liberty interest). In Griffin v. Vaughn, 112 F.3d 703, 708-09 (3d Cir. 1997), the Court of Appeals for the Third Circuit held that a 15-month confinement in administrative custody did not impose "atypical and significant hardship," even in the face of state regulation requiring release to the general population after 20 days in the absence of a misconduct charge. The Court of Appeals did note, however, that if an inmate is committed to undesirable conditions for an atypical period of time in violation of state law, that is a factor to be considered in determining whether the prisoner has been subjected to "atypical and significant hardship" triggering due process protection. Id.

    It is well established that a prisoner possesses no liberty interest arising from the Due Process Clause in a particular custody level or place of confinement. See, e.g., Olim v

16

Wakinekona, 461 U.S. 238, 245-46 (1983); Hewitt, 459 U.S. at 466-67; Meachum v. Fano, 427 U.S. 215, 224-25 (1976); Montanye, 427 U.S. at 242. Similarly, the Court of Appeals for the Third Circuit has held that New Jersey prisoners have no liberty interest, under either the United States Constitution or state law, in avoiding transfer to the Security Threat Group Management Unit, even without a hearing. See Fraise v. Terhune, 382 F.3d 506, 522-23 (3d Cir. 2002).

Thus, here Plaintiff has failed to state a claim for deprivation of liberty without due process in connection with his confinement in the Management Control Unit. As he is subject to confinement in the Management Control Unit even without a hearing, see Fraise v. Terhune, he cannot base a due process claim upon any alleged unfairness in the hearing he received.

### IV.   CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate

to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).

Here, jurists of reason would not find debatable this Court's resolution of his constitutional claims. Petitioner has failed to make a substantial showing of the denial of a constitutional right. No certificate of appealability shall issue.

## V.   CONCLUSION

For the reasons set forth above, the Petition must be denied. An appropriate order follows.


        s/Freda L. Wolfson
Freda L. Wolfson
United States District Judge

Dated: May 28, 2010